CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

FEB 29 2012

JULIA C. DUDLEY, CLERK
BY:
    DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| MALCOLM MUHAMMAD, )<br>    Plaintiff, ) | Civil Action No. 7:11cv00610 |
| ) | |
| v. ) | **MEMORANDUM OPINION** |
| ) | |
| M. STANFORD, *et al.*, ) | By: Samuel G. Wilson |
|     Defendants. ) | United States District Judge |

Plaintiff Malcolm Muhammad, a Virginia inmate proceeding *pro se*, brings this action pursuant to 42 U.S.C. § 1983, with jurisdiction vested under 28 U.S.C. § 1343. Muhammad alleges that the defendants filed a false disciplinary charge against him in retaliation for a civil rights action he filed two years prior. Muhammad seeks declaratory and injunctive relief as well as damages. The court finds that Muhammad's allegations fail to state a claim upon which the court may grant relief and, therefore, dismisses his action without prejudice, pursuant to 28 U.S.C. § 1915A(b)(1).

I.

Muhammad alleges that on July 7, 2011, while housed at Wallens Ridge State Prison, defendant Stapleton filed a false disciplinary offense report against him. Stapleton's report stated that while conducting security rounds in Muhammad's pod, Muhammad walked past Stapleton and Muhammad stated, "since you're on the floor now, I'm going to whip your ass." The report indicates that Stapleton instructed Muhammad on several occasions to "lock up," but Muhammad refused and was consequently placed in restraints and escorted to the medical unit.[1] As a result of Stapleton's report, Muhammad was charged with "threatening bodily harm." A hearing was scheduled concerning the charge. Muhammad requested two witness statements as

---

[1] The court notes that Muhammad does not allege and there is no indication in his complaint that he suffered any injuries as a result of the incident.

well as a copy of the video footage from the pod during the relevant time. One inmate witness completed a written statement for Muhammad. Another inmate witness refused to submit a statement on Muhammad's behalf. Defendant Hensley, the Institutional Hearing Officer assigned to Muhammad's case, denied Muhammad's request for the video tape because the camera did not pick up voices and, therefore, Hensley did not see how it would be beneficial to the case. At the hearing, Hensley listened to Muhammad's arguments, read Stapleton's report into the record, read the witness's statement into the record, asked Muhammad questions, and ultimately determined that, based on the evidence presented at the hearing, Muhammad was guilty of threatening bodily harm. As a penalty, Muhammad was given ten days in isolation. Muhammad appealed and his appeals were denied. Muhammad claims that the Warden and Assistant Warden did not believe that the offense was legitimately charged, but he concedes that they did nothing to correct it. Muhammad claims that the allegedly false disciplinary charge was filed against him as retaliation for a civil rights action he filed two years prior.

## II.

Muhammad alleges that his placement in isolation violated his due process rights afforded under the Fourteenth Amendment. However, he has failed to allege sufficient facts in support of his claim.

In order to prevail on a procedural due process claim, an inmate must first demonstrate that he was deprived of "life, liberty, or property" by governmental action. Bevrati v. Smith, 120 F.3d 500, 502 (4th Cir. 1997). Although prisoners are afforded some due process rights while incarcerated, liberty interests are limited to "freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995)

(citation omitted); see also Beverati, 120 F.3d at 502 (holding that a six-month term in segregation did not impose an atypical hardship and therefore implicated no liberty interests when the inmates alleged that their cells were infested with vermin and smeared with urine; that no outside recreation was permitted; that there were no religious services available; and that food was served in considerably smaller portions).[2] Moreover, changes "in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison." Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991).[3]

The conditions of Muhammad's isolation at Wallens Ridge State Prison may in fact have been more restrictive than those applied to inmates in the general population. However, Muhammad has failed to allege facts showing that the hardship was so significant or atypical that he had a liberty interest in remaining out of isolation. Accordingly, the court will dismiss Muhammad's due process claim.

### III.

To the extent Muhammad's complaint can be construed as alleging that his placement in isolation was cruel and unusual punishment in violation of the Eighth Amendment, it also fails. Although the Eighth Amendment protects prisoners from cruel and unusual living conditions, an

---

[2] In Wilkinson v. Austin, 545 U.S. 209 (2005), the Court found that inmates did have a liberty interest in avoiding assignment to a state's supermax prison. In reaching this conclusion, the Court carefully distinguished the supermax facilities from normal segregation units on three grounds. First, inmates in the supermax facility were "deprived of almost any environmental or sensory stimuli and of almost all human contact." Wilkinson, 545 U.S. at 214. Second, they were assigned for "an indefinite period of time, limited only by [the] inmate's sentence." Id. Third, once assigned to supermax "[i]nmates otherwise eligible for parole lose their eligibility while incarcerated" at the facility. Id. at 215. After noting other onerous conditions of confinement, including that the cells were lighted twenty-four hours per day, the court stated: "While any of these conditions standing alone might not be sufficient to create a liberty interest, taken together they impose an atypical and significant hardship within the correctional context." Id. at 224. The instant case appears readily distinguishable from Wilkinson.

[3] Further, prisoners do not have a constitutionally recognized liberty interest in a particular security classification nor a constitutional right to be confined in a particular prison. Hewitt v. Helms, 459 U.S. 460, 468 (1983); Meachum v. Fano, 427 U.S. 215, 224 (1976).

inmate is not entitled to relief simply because of exposure to uncomfortable, restrictive, or inconvenient conditions of confinement, for, "[t]o the extent that such conditions are restrictive or even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." Rhodes v. Chapman, 452 U.S. 337, 347 (1981); see also In re Long Term Administrative Segregation of Inmates Designated as Five Percenters, 174 F.3d 464, 471-72 (4th Cir. 1999) (long-term placement in segregation or maximum custody is not cruel and unusual punishment). Therefore, in order to state a claim of constitutional significance regarding prison conditions, a plaintiff must allege that the living conditions violated contemporary standards of decency and that prison officials were deliberately indifferent to those conditions. Wilson v. Seiter, 501 U.S. 294 (1991). In addition, a plaintiff must allege facts sufficient to show either that he has sustained a serious or significant mental or physical injury as a result of the challenged conditions or that the conditions have created an unreasonable risk of serious damage to his future health. Strickler v. Waters, 989 F.2d 1375, 1380-81 (4th Cir. 1993); Helling v. McKinney, 509 U.S. 25 (1993).

While being confined in isolation may be restrictive and inconvenient, Muhammad does not allege that his living conditions violated contemporary standards of decency, that any of the defendants were deliberately indifferent to those conditions, or that he suffered a serious mental or physical injury as a result of his confinement in isolation. Further, there is no indication that the conditions posed an unreasonable risk of serious harm. Accordingly, the court finds that Muhammad has also failed to state a claim under the Eighth Amendment.

## IV.

Finally, to the extent Muhammad alleges that the defendants retaliated against him by filing a false disciplinary charge against him, it fails. It is well-settled that state officials may not retaliate against an inmate for exercising his constitutional rights, including his right to access

4

the courts. See ACLU v. Wicomico County, 999 F.2d 780, 785 (4th Cir. 1993). However, in order to sustain a cognizable retaliation claim under § 1983, an inmate must point to specific facts supporting his claim of retaliation. White v. White, 886 F.2d 271 (4th Cir. 1989). "[B]are assertions of retaliation do not establish a claim of constitutional dimension." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994) (federal courts should regard inmate claims of retaliation with "skepticism").

In this case, Muhammad does not point to any facts that demonstrate that Stapleton's filing of the disciplinary charge was based on a retaliatory motive. Accordingly, the court finds that Muhammad's conclusory allegations of retaliation fail to state a claim on which relief may be granted under § 1983.

V.

For the reasons stated, the court finds that Muhammad has not presented any claims on which relief can be granted and therefore dismisses Muhammad's complaint, pursuant to 28 U.S.C. § 1915A(b)(1).

The Clerk is directed to send a copy of this Memorandum Opinion and accompanying Order to plaintiff.

ENTER: This 29th day of February, 2012.

_____
UNITED STATES DISTRICT JUDGE